IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANNETTE M. MARTZ, | : | CIVIL ACTION NO. **3:CV-05-2147** |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

This is a Social Security disability case pursuant to 42 U.S.C. § 405(g), wherein the Plaintiff, Annette M. Martz, is seeking review of the decision of the Commissioner of Social Security ("Commissioner")[1] which denied her claim for child's supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act (Act), 42 U.S.C. §§ 1381-1383f.

## I.  PROCEDURAL HISTORY.

Plaintiff, through her mother, protectively filed an application for child's SSI on November 10, 2003, due to a learning disability. (R. 40, 68). Plaintiff's application was denied initially (R. 18-21), and she requested a hearing. (R. 22). On June 27, 2005, Plaintiff, represented by counsel, and Plaintiff's mother testified at a hearing before an Administrative Law Judge ("ALJ"). (R. 31-38).

---

[1] We have substituted the present Social Security Commissioner, Michael J. Astrue, as the Defendant herein.

The ALJ issued a decision denying Plaintiff's claim on August 12, 2005.  (R. 9-16).

Plaintiff requested review by the Appeals Council (R. 7-8), which denied the request on

September 15, 2005.  (R. 4-6).  Plaintiff thereafter filed a complaint with this court.  Upon

review, the tape from the June 27, 2005 ALJ hearing was inaudible.  (R. 240).  Therefore, the

case was remanded to the Commissioner.  (R. 231).  On January 12, 2006, the Appeals Council

vacated the final decision of the Commissioner and remanded the case to the ALJ for a *de novo*

hearing.  (R. 256).

A second hearing was held on April 24, 2006.  (R. 188-230).  Plaintiff, represented by

counsel, and Plaintiff's mother testified at the hearing.  The ALJ issued a decision denying

Plaintiff's claim on May 15, 2006.  (R. 176-187).  Plaintiff requested review by the Appeals

Council which denied the request on March 22, 2007.  (R. 295-96).  Thus, the ALJ's May 15,

2006 decision became the final decision of the Commissioner.  42 U.S.C. § 405(g).  That

decision is the subject of this appeal.

In compliance with the Procedural Order issued in this matter, the parties have filed

briefs in support of their respective positions.  (Docs. 17, 18, 19).

## II.  STANDARD OF REVIEW.

When reviewing the denial of disability benefits, we must determine whether the denial

is supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988);

*Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993).  Substantial evidence "does not mean a large or

considerable amount of evidence, but rather such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552 (1988);

*Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999).  It is less than a preponderance of the evidence but more than a mere scintilla.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To be eligible for SSI payments, an individual must be disabled and must meet certain income criteria.  42 U.S.C. § 1382(a).  To be considered disabled under the Act, the individual must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III.  ELIGIBILITY EVALUATION PROCESS.

A three-step evaluation process is used to determine if a child claimant is disabled.  20 C.F.R. § 416.924.  The first step of the process requires the claimant to establish that he has not engaged in substantial gainful activity.  If a claimant has been doing substantial gainful activity, the Commissioner will determine that she is not disabled and will not review the claim further.  If the claimant is not doing substantial gainful activity, the Commissioner will determine, at step

3

two, if the claimant has a physical or mental impairment(s) or combination of impairments that is severe.  If the impairment(s) is not severe, the Commissioner will determine that the claimant is not disabled and will not review the claim further.  If the impairment(s) is severe, the Commissioner will then proceed to step three and determine if the claimant has an impairment(s) that meets, medically equals, or functionally equals the listings.[2]  If the Commissioner finds that the claimant has such an impairment(s), and it meets the duration requirement, the Commissioner will find that the claimant is disabled.  20 C.F.R. § 416.924(a).

Here, the ALJ proceeded through each step of the sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Act.  (R. 179-87).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity at any time relevant to the hearing decision.  (R. 182).  At step two, the ALJ found that Plaintiff's learning disorder was a severe impairment.  (R. 182).  At step three, the ALJ determined that Plaintiff's impairment, either singly or in combination, did not meet, medically equal, or functionally equal the criteria of any listed impairment in Appendix 1, Subpart P, Regulations No. 4.  (R. 182).  Thus, the ALJ concluded that Plaintiff was not disabled under the Act.  (R. 187).  20 C.F.R.

---

[2]  To "functionally equal" a listing, the impairment(s) must be "of listing-level severity; i.e., it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain."  20 C.F.R. § 416.926a(a).  There are six domains of functioning: (1) acquiring and using information; (2) attending to and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) ability to care for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).  A "marked" limitation exists when the impairment interferes seriously with the child's ability to independently initiate, sustain, or complete activities in the domain in an age-appropriate manner.  An "extreme" limitation exists when the impairment interferes very seriously with domain activities.  20 C.F.R. §§ 416.926a(b)(1)(i)-(vi), 416.926a(e)(3).

§ 416.924(a).

## IV. BACKGROUND.

### A. Factual Testimony

Plaintiff was ten years old and in fourth grade at the time of the April 24, 2006 ALJ hearing. (R. 196, 214). She alleged disability due to a learning disorder and seizure disorder. Plaintiff is placed in half regular classes and half special education classes at school. (R. 196). Plaintiff's mother testified that school is going well for Plaintiff and she does well in the special education classes. (R. 197, 205). Plaintiff's teacher reported that Plaintiff is doing the same as the previous year. (R. 209). She has no problems getting along with other children and has no discipline problems at school or at home. (R. 197). She has friends her own age and also gets along with adults. (R. 203). Plaintiff exhibits no behavioral problems at church or in a restaurant. (R. 203). If she does not understand a game, she becomes frustrated and walks away. (R. 203-04, 209).

Plaintiff participates in no activities. After school, Plaintiff does her homework, plays with her siblings or watches television. (R. 198-99). Plaintiff requires prompting to begin her homework and has difficulty if she does not understand the subject matter. (R. 199, 206). Plaintiff reads for school every night, however she reads below fourth grade level, sometimes on second grade level. (R. 199-200, 207). Plaintiff has no problems with sleeping. (R. 201, 204-05). Plaintiff's mother testified that Plaintiff can focus on a television program or video game for approximately fifteen minutes at a time. (R. 202-03). However, on the daily activities questionnaire, Plaintiff's mother reported that Plaintiff can watch an entire tv show "very well."

(R. 107).  She gets easily distracted when completing a task or playing a game.  (R. 212-13).  She does household chores and she does a very good job keeping her room clean.  (R. 106).  At the time of the ALJ hearing, Plaintiff was taking no medication.  (R. 201).  She previously took medication for her seizures, however ceased taking the medication.  (R. 201).  Plaintiff had no recent seizures at the time of the ALJ hearing.  (R. 202).

Plaintiff testified that her mother sometimes asks her if she has homework assignments. (R. 216).  Sometimes Plaintiff lies and tells her mother she has no homework when in fact she does have homework assignments.  (R. 216).  Plaintiff has had points deducted from her assignments for failure to complete homework.  (R. 216).

Plaintiff testified that she has friends at school.  (R. 219).  At home, Plaintiff has chores of cleaning the dishes, cleaning the floor and doing laundry.  (R. 220).  She generally gets along well with her siblings and they help her learn games.  (R. 221).  Plaintiff stated that she has trouble reading her school books.  When she gets frustrated playing a game or reading she usually stops.  Occasionally, she attempts to complete the task another time.  (R. 225).

Plaintiff believes she is doing better in school this year than last year.  (R. 226).  She believes she is learning more, reading more difficult books and doing better in social studies.  (R. 226).  Plaintiff has difficulty distinguishing right from left and has difficulty telling time.  (R. 226-27).

### B.  Medical and Educational Records/ Background

A school evaluation report was completed on September 30, 2003 when Plaintiff was in second grade.  (R. 60-65).  On the Wechsler Intelligence Scale for Children-III, Plaintiff earned a

verbal IQ of 75, a performance IQ of 72 and  a full-scale IQ of 71.  (R. 60).  This indicated that Plaintiff functioned in the borderline range of intellectual functioning ("BIF").  (R. 60).  Plaintiff's intellectual potential was in the range of being mildly mentally retarded.  (R. 60).

On the Wechsler Individual Achievement Test-II, Plaintiff earned a score of 75 for word reading, 70 for reading comprehension, 84 for pseudoword decoding, 78 for numerical operations, 61 for math reasoning, 69 for spelling and 76 for listening comprehension.  (R. 61). These scores indicated that, although Plaintiff was in second grade, her math reasoning was on the kindergarten level and her work reading and numerical operations were on the first grade level.  (R. 61).  Overall, the scores indicated significant delays from the second grade level.  (R. 61).  The evaluator concluded that Plaintiff was a child with a disability, the disabilities being mild mental retardation and a speech impairment.  (R. 61).  Plaintiff also required specially designed instruction.  (R. 62).  An individualized education program ("IEP") was recommended to meet Plaintiff's needs.  (R. 62).

On February 9, 2004, Henry Weeks, Ph.D., reviewed the record and completed a Childhood Disability Evaluation Form.  (R. 165-70).  Dr. Weeks found that Plaintiff had an impairment or combination of impairments that are severe, namely a learning disorder and borderline intellectual functioning versus mild mental retardation.  However, he found that these impairments do not meet, medically equal, or functionally equal the listings.  (R. 165).  Dr. Weeks found no limitation in moving about and manipulating objects, no limitation in health and physical well-being and no limitation in interacting and relating with others.  (R. 167, 169). Dr. Weeks found less than marked limitation in caring for oneself, noting that Plaintiff will not

ask for help.  (R. 167).  He also found less than marked limitation in attending and completing tasks, noting that Plaintiff needs extended time and support for assignments.  (R. 169).  Dr. Weeks found marked limitation in acquiring and using information.  (R. 169).  He noted that Plaintiff was one year behind, has slow BIF, she needs directions repeated, requires extra support and has an IEP.  (R. 169).

Plaintiff's special education teacher, Ginger Beegle, completed a Teacher Questionnaire on February 5, 2004 when Plaintiff was in second grade.  (R. 89-96).  She taught Plaintiff math and reading.  (R. 89).  In the domain of acquiring and using information, Ms. Beegle indicated that Plaintiff had a slight problem comprehending oral instructions.  She had an obvious problem understanding school and content vocabulary, understanding and participating in class discussions and recalling and applying previously learned material.  Plaintiff had a serious problem comprehending and doing math problems and learning new material.  Plaintiff had a very serious problem reading and comprehending written material, providing organized oral explanations and adequate descriptions, expressing ideas in written form and applying problem solving skills in class discussions.  (R. 90).  Plaintiff required repetitive directions and extra support was required in all academic areas.  (R. 90).

In the domain of attending and completing tasks, Ms. Beegle indicated that Plaintiff had no problem paying attention when spoken to directly, sustaining attention during play/ sports activities, refocusing to task when necessary, carrying out single-step instructions, waiting to take turns and changing from one activity to another without being disruptive.  She had a slight problem focusing long enough to finish an assigned activity or task, organizing her own things or

school materials, completing class/ homework assignments and working at a reasonable pace/ finishing on time.  Plaintiff had an obvious problem carrying out multi-step instructions, completing work accurately without careless mistakes and working without distracting herself or others.  (R. 91).  Ms. Beegle noted that Plaintiff required extra time to complete assignments and required support for completion of assignments.

Ms. Beegle reported that Plaintiff had no problems in the domain of interacting and relating with others.  (R. 92-93).  She also had no problems in the domain of moving about and manipulating objects.  (R. 93).

In the domain of caring for herself, Plaintiff had no problem handling frustration appropriately, being patient when necessary, cooperating in, or being responsible for, taking needed medications, using good judgment regarding personal safety and dangerous circumstances, identifying and appropriately asserting emotional needs and using appropriate coping skills to meet daily demands of school environment.  She had a slight problem caring for physical needs, responding appropriately to changes in her own mood and knowing when to ask for help.  Plaintiff had an obvious problem taking care of personal hygiene.  (R. 94).  Ms. Beegle noted that Plaintiff usually will not ask for help, but accepts the help when offered.

Ms. Beegle noted that Plaintiff had no problems with health and physical well-being.  (R. 95).

On March 18, 2005, Ms. Beegle completed another Teacher Questionnaire when Plaintiff was in third grade.  (R. 110-17).  In the domain of acquiring and using information, Plaintiff had the same limitations, with the exception of an obvious problem in learning new

9

material, as opposed to her previous assessment of a serious problem in learning new material. (R. 90, 111).  Thus, Plaintiff improved in this area.  In the domain of attending and completing tasks, Plaintiff had the same limitations.  (R. 91, 112).  Ms. Beegle again noted that Plaintiff had no problems interacting and relating with others and no problems moving about and manipulating objects.  (R. 92-93, 114).  In the domain of caring of oneself, Plaintiff had the same limitations, with the exception of having no problem knowing when to ask for help rather than a slight problem knowing when to ask for help.  (R. 94, 116).  Again, Ms. Beegle noted that Plaintiff had no problems with health and physical well-being.  (R. 95, 116).

## V.  DISCUSSION.

Plaintiff contends that the ALJ erred in the following ways: (1) by finding that Plaintiff did not have an extreme limitation in acquiring and using information; (2) by finding that Plaintiff did not otherwise meet or equal any listing; (3) by failing to address the evidence from Plaintiff's teacher; and (4) by finding that the evidence and testimony was not fully credible.  (Doc. 17 at 4).

### A.  Whether the ALJ erred in finding that Plaintiff did not have an extreme limitation in the domain of acquiring and using information.

For a claimant's impairment(s) to functionally equal a listing, it must result in "marked" limitations in two listed domains of functioning or an "extreme" limitation in one domain.  20 C.F.R. § 416.926a(a).  As stated *supra,* note 2, the Regulations list six applicable domains of functioning: (1) acquiring and using information; (2) attending to and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) ability to care for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).  A

10

"marked" limitation exists when the impairment interferes seriously with the child's ability to independently initiate, sustain, or complete activities in the domain in an age-appropriate manner.  An "extreme" limitation exists when the impairment interferes very seriously with domain activities.  20 C.F.R. §§ 416.926a(b)(1)(i)-(vi), 416.926a(e)(3).

Plaintiff contends that the ALJ should have found an extreme limitation in the domain of acquiring and using information.  (Doc. 17 at 10-12).  The ALJ found that Plaintiff has a marked limitation in acquiring and using information, a less than marked limitation in attending and completing tasks, no limitation in interacting and relating with others, no limitation in moving about and manipulating objects, no limitation in caring for herself and no limitation in health and physical well-being.  (R. 183-87).

The ALJ is not required to cite each piece of evidence in the record, but must only sufficiently explain the weight given to obviously probative exhibits.  *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).  Here, the ALJ cited substantial evidence that Plaintiff had a marked limitation in the domain of acquiring and using information.  (R. 183-84).  20 C.F.R. § 416.926a(b)(1)(i).

With respect to the domain of acquiring and using information, the ALJ considers how well the child can acquire and learn information, and how well he can use the information he has learned.  20 C.F.R. § 416.926a(g).  The ALJ noted that Plaintiff has a verbal IQ of 75, a performance IQ of 72 and a full scale IQ of 71.  (R. 60, 184).  Such scores place Plaintiff in the borderline range of intellectual functioning.  (R. 60, 184).  Plaintiff is placed in half special education classes and half regular education classes.  (R. 184).  The ALJ noted that Plaintiff

requires repetitive directions and extra support, but she is nonetheless able to learn.  (R. 184).

Plaintiff's mother testified that Plaintiff is able to read and complete her homework, with prompting.  She has difficulty if she does not understand the subject matter.  (R. 199-200, 206-07).  In the beginning of the school week, Plaintiff has no difficulty reading books that are below grade level.  (R. 207).  Later in the school week, Plaintiff is assigned to read books on grade level and she has a more difficult time reading them.  (R. 206-07).  Plaintiff's mother testified that Plaintiff's grade average is 80 if the work is adapted to her level and 60 if it is not adapted to her level.  (R. 205-06).  Plaintiff's mother believed Plaintiff was going to pass fourth grade and progress to fifth grade.  (R. 212).  She is not aware of a situation where a special education student repeated a grade.  (R. 212).

On the February 5, 2004 Teacher Questionnaire, Ms. Beegle found that Plaintiff had six "serious to very serious" problems and five "slight to obvious" problems in the domain of acquiring and using information.  (R. 90).  On the March 18, 2004 Teacher Questionnaire, Ms. Beegle found that Plaintiff had five "serious to very serious" problems and five "slight to obvious" problems in the domain of acquiring and using information.  (R. 111).  Ms. Beegle found that Plaintiff improved from having a "serious" problem to only an "obvious" problem in the area of learning new material.  (R. 90, 111).

On the February 9, 2004 Childhood Disability Evaluation Form, Dr. Weeks found Plaintiff had a marked limitation in the domain of acquiring and using information.  (R. 169).  Dr. Weeks did not conclude that Plaintiff had an extreme limitation in this domain.

Based on the evidence of record, the ALJ found that Plaintiff had a marked impairment in acquiring and using information. The ALJ's decision was a fair inference. There is substantial evidence to support the ALJ's conclusion that Plaintiff's impairments caused a marked limitation on her ability to acquire and use information, not an extreme limitation.

**B. Whether the ALJ erred in finding that Plaintiff did not otherwise meet or equal any listing.**

The ALJ found that Plaintiff suffers from the severe impairment of a learning disorder. (R. 182). The ALJ also concluded that Plaintiff's seizure disorder is not a severe impairment. (R. 182). In making the determination regarding Plaintiff's seizure disorder, the ALJ evaluated her impairments pursuant to Listings 111.02 (Major motor seizure disorder) and 111.03 (Nonconvulsive epilepsy). (R. 182). 20 C.F.R. pt. 404, subpt. P, app. 1, Listings 111.02, 111.03. The ALJ found that Plaintiff did not meet the requirements of these Listings, noting that the required frequency of seizures is not shown and she does not have an IQ score of 70 or less. (R. 182). Plaintiff concedes that her seizure disorder is not a severe impairment. (Doc. 17 at 12).

Plaintiff argues that her learning disorder meets or equals Listings 112.05 (Mental Retardation) or 112.10 (Autistic Disorder and Other Pervasive Developmental Disorder). (Doc. 17 at 12-15). In making his severity determination regarding Plaintiff's learning disorder, the ALJ states that he considered Listing 112.05 and "the other listings." (R. 182). The ALJ states that Plaintiff does not have IQ scores of 70 or below under Listing 112.05. (R. 182).

For a claimant's impairment(s) to meet Listing 112.05, Mental Retardation, the impairment must satisfy the requirements of either § A, B, C, D, E or F of the Listing. 20 C.F.R.

13

pt. 404, subpt. P, app. 1, Listing 112.05.  Listing 112.05 provides, in pertinent part, as follows:

> A.  For older infants and toddlers (age 1 to attainment of age 3), resulting in at least one of the appropriate age-group criteria in paragraph B1 of 112.02; or, for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraphs B2 of 112.02;
> OR
> B.  Mental incapacity evidenced by dependence upon others for personal needs (grossly in excess of age-appropriate dependence) and inability to follow directions such that the use of standardized measures of intellectual functioning is precluded;
> OR
> C.  A valid verbal, performance, or full scale IQ of 59 or less;
> OR
> D.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function;
> OR
> E.  A valid verbal, performance, or full scale IQ of 60 through 70 and:
> > 2.  For children (age 3 to attainment of age 18), resulting in at least one of paragraphs B2b or B2c of 112.02;
> OR
> F.2.  For children (age 3 to attainment of age 18), resulting in the satisfaction of 112.02B2a, and a physical or other mental impairment imposing an additional and significant limitation of function.

20 C.F.R. pt. 404, subpt. P, app. 1, Listing 112.05.

For a claimant's impairment(s) to meet Listing 112.10, Autistic Disorder and Other Pervasive Developmental Disorders, the impairment must satisfy the requirements of both §§ A and B of the Listing.  20 C.F.R. pt. 404, subpt. P, app. 1, Listing 112.10. The requirements for Listing 112.10, Section A are essentially the same for Autistic Disorder and Other Pervasive Developmental Disorders.  Section A provides as follows:

> A.  Medically documented findings of the following:
> > 1. For autistic disorder, all of the following:
> > > a. Qualitative deficits in the development of reciprocal social interaction; and

14

        b. Qualitative deficits in verbal and nonverbal
        communication and in imaginative activity; and
        c. Markedly restricted repertoire of activities and interests;
OR
2. For other pervasive developmental disorders, both of the following:
        a. Qualitative deficits in the development of reciprocal social
        interaction; and
        b. Qualitative deficits in verbal and nonverbal
        communication and in imaginative activity.

20 C.F.R. pt. 404, subpt. P, app. 1, Listing 112.10A.  Section B of Listing 112.10 provides as follows:

B.  For older infants and toddlers (age 1 to attainment of age 3), resulting in at least one of the appropriate age-group criteria in paragraph B1 of 112.02; or, for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraphs B2 of 112.02.

20 C.F.R. pt. 404, subpt. P, app. 1, Listing 112.10B.

The ALJ found that Plaintiff suffered from a learning disorder.  The ALJ specifically stated that Plaintiff does not have IQ scores of 70 or below as required under Listing 112.05.  Further, Plaintiff was never diagnosed with autism and there is no medical evidence suggesting such a diagnosis.  There is substantial evidence to support the ALJ's finding that Plaintiff's impairments did not meet Listings 112.05 and 112.10.

**C.  Whether the ALJ erred by failing to address the evidence from Plaintiff's teacher.**

Plaintiff argues that the ALJ erred by failing to properly address Ms. Beegle's Teacher Questionnaires and by failing to discuss what weight, if any, was accorded to the questionnaires.  (Doc. 17 at 15).  Defendant asserts that "[t]here is no question that the ALJ adopted Ms. Beegle's answers because the ALJ's decision and the finding of Ms.

Beegle are nearly identical." (Doc. 18 at 10). Defendant acknowledges that the ALJ and Ms. Beegle came to different conclusions in the domain of acquiring and using information. The ALJ found only a marked limitation in the domain of acquiring and using information whereas Ms. Beegle found more serious/ marked and very serious/ extreme problems.

Plaintiff argues that although the teacher's questionnaire is an "other source," it is still entitled to weight. (Doc. 17 at 15). Acceptable medical sources include only licensed physicians, licensed or certified psychologists (including school psychologists), licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. *See* 20 C.F.R. §§ 404.1513, 416.913. Thus, educational personnel, including teachers, are not acceptable medical sources and not entitled to controlling weight. *Id.*

The ALJ notes that Ms. Beegle's second questionnaire shows about the same limitations or some improvement from the first questionnaire. (R. 183). In the domain of attending and completing tasks, the ALJ cites Ms. Beegle's statement that she can pay attention and refocus for periods of time. (R. 184). In the domain of moving about and manipulating objects, the ALJ states that Ms. Beegle indicated that Plaintiff has no problem in this area. (R. 186). The ALJ clearly used Ms. Beegle's questionnaire in rendering his decision. There is substantial evidence that the ALJ accorded adequate weight to Ms. Beegle's questionnaires.

**D.  Whether the ALJ erred in finding that the evidence and testimony are not fully credible.**

Plaintiff argues that the ALJ erred by finding Plaintiff and her mother not credible. (Doc. 17 at 16).  Defendant counters that Plaintiff's credibility argument is premised on Plaintiff's position that Ms. Beegle's questionnaires support a disability.  (Doc. 18 at 11, n.2).  Plaintiff asserts that Plaintiff's testimony and her mother's testimony support the limitations found by Ms. Beegle.  (Doc. 17 at 16).  Defendant argues that Ms. Beegle's questionnaires show no disability, thus Plaintiff's credibility argument lacks merit.  (Doc. 18 at 11, n.2).

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.' *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 531 (6th Cir.1997); *see also Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir.1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')."  *Frazier v. Apfel*, 2000 WL 288246 (E.D. Pa. March 7, 2000).  "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Com. of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

An ALJ may find testimony to be not credible, but he must "give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence."  *Ferguson v. Schweiker,* 765 F.2d 31, 37 (3d Cir.1985).  Where in fact "medical evidence does support a claimant's complaints of

pain, the complaints should then be given 'great weight' and may not be disregarded unless there exists contrary medical evidence." *Mason*, 994 F.2d at 1067-68 (citing *Carter v. Railroad Retirement Bd.*, 834 F.2d 62, 65 (3d Cir. 1987); *Ferguson*, 765 F.2d at 37).

The Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529. First, symptoms, such as pain, shortness of breath, fatigue, *et cetera,* will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. § 404.1529(b). Once a medically determinable impairment which results in such symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on the claimant's ability to work. 20 C.F.R. § 404.1529(b). *See also Diaz v. Commissioner of Social Security*, 39 Fed. App'x 713, 714 (3d Cir. June 12, 2002). In so doing, the medical evidence of record is considered along with the claimant's statements. 20 C.F.R. § 404.1529(b).

Further, Social Security Ruling 96-7p gives the following instructions in evaluating the credibility of the claimant's statements regarding her symptoms: "In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements

about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true.  When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements."  Social Security Ruling 96-7p.

Here, the ALJ considered Plaintiff's testimony and Plaintiff's mother's testimony pursuant to Social Security Rulings 96-2p, 96-5p and 96-6p and 20 C.F.R. § 416.927. (R. 182-83).  Plaintiff's mother testified that school is going well for Plaintiff, she does well in the special education classes, gets along with other children and adults, has friends at school, has no discipline problems at school or at home, has no behavioral problems and becomes easily frustrated.  (R. 197, 203-04, 205).  Plaintiff's mother stated that Plaintiff participates in no activities.  Plaintiff does her homework, with prompting, and has difficulty if she does not understand.  (R. 198-99).  She reads below grade level. (R. 199-200, 207).  She plays with her siblings, watches television and plays games.  (R. 198-99, 206).   Plaintiff becomes easily frustrated and is easily distracted, usually only focusing for fifteen minutes at a time.  (R. 202-03, 209, 212-13).  Plaintiff has no problems with sleeping.  (R. 201, 204-05).  She does household chores.  Plaintiff takes no medication.  (R. 201).

The ALJ also considered Plaintiff's symptoms pursuant to SSR 96-7p and 20 C.F.R. § 416.929.  (R. 182).  The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but not to the intensity,

duration and limiting effects as alleged by Plaintiff. (R. 183). The ALJ found that Plaintiff's descriptions of her symptoms are not entirely credible. (R. 183). Plaintiff testified that she sometimes lies to her mother about having homework assignments. (R. 216). Plaintiff testified that she believes she is doing better in school, learning more and reading more difficult books. (R. 226). Plaintiff testified that she has friends at school, gets along with her siblings, does household chores, has trouble reading and gets frustrated easily. (R. 219-221). She acknowledged that she has difficulty distinguishing right from left and has difficulty telling time. (R. 226-27).

The ALJ noted that on the impairment questionnaire completed by Plaintiff's mother, she indicates that Plaintiff is easily distracted and becomes frustrated when having trouble. (R. 183). On the daily activities questionnaire, the only problems Plaintiff's mother reported were that Plaintiff is slow in school, has problems with reading, spelling, handwriting and math and can only complete simple projects. (R. 104-07). Plaintiff's mother reported no other problems or impairments. Similarly, on the Disability Report completed by Plaintiff's mother, the only problem she reported was that Plaintiff is slow at learning, is in special education classes and has difficulty with writing and spelling. (R. 68, 83).

The ALJ noted that the most recent Teacher Questionnaire reports that Plaintiff has the same limitations or some improvement from the last questionnaire. The ALJ ultimately concluded that Plaintiff's impairments do not rise to the level of being marked limitations. (R. 183). There is a significant basis for a determination that the ALJ

adequately demonstrated that Plaintiff and her mother were not fully credible.

## VI.  RECOMMENDATION.

Based on the foregoing, it is respectfully recommended that Plaintiff's appeal be DENIED.

**s/Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: November 13, 2007**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANNETTE M. MARTZ,                    :        CIVIL ACTION NO. **3:CV-05-2147**
                                     :
   Plaintiff                        :        (Judge Caputo)
                                     :
   v.                               :        (Magistrate Judge Blewitt)
                                     :
MICHAEL J. ASTRUE,                   :
Commissioner of                      :
Social Security,                     :
                                     :
   Defendant                        :

## NOTICE

     **NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **November 13, 2007.**

     Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

     Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where

required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: November 13 , 2007**